FILED & ENTERED

DEC 14 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY zick         DEPUTY CLERK

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>CHARLES L. WILLETT,<br><br>                    Debtor.<br>_____<br>WALTER W. MOSHER, JR., AS TRUSTEE OF THE WALTER W. MOSHER, JR. LIVING TRUST DATED MARCH 22, 2002,<br><br>                    Plaintiff,<br>v.<br><br>CHARLES L. WILLETT, <u>et al.</u>,<br><br>                    Defendants. | Case. No. 9:14-bk-11123-PC<br><br>Adversary No. 9:15-ap-01001-PC<br><br>Chapter 13<br><br><br><br>**MEMORANDUM DECISION**<br><br><br><br><br>Date:  November 5, 2015<br>Time:  10:00 a.m.<br>Place:  United States Bankruptcy Court<br>        Courtroom # 201<br>        1415 State Street<br>        Santa Barbara, CA  93101 |

      Plaintiff, Walter W. Mosher, Jr., as trustee of the Walter W. Mosher, Jr. Living Trust Dated March 22, 2002 ("Mosher") seeks a preliminary injunction against Defendants, Charles L. Willett ("Willett") and Judith Lee Mouderres, individually and as trustee of the Judith Lee

Mouderres Revocable Trust Dated August 25, 1997 ("Mouderres") pursuant to F.R.Civ.P. 65(a),[1] to (1) compel the installation of meters to record the usage of water by Mosher, Willet and Mouderres on their respective properties from a water distribution system operated and maintained by the parties pursuant an Agreement Regarding Water Well and Utility Easements;[2] (2) prohibit Willet and Mouderres from interfering with the acquisition, installation, and monitoring of the water meters; and (3) direct Willet and Mouderres "to pay their equal share of the purchase price, installation and monitoring costs for the meters."[3]  Having considered Mosher's Application, Mouderres' opposition thereto, the reply and argument of counsel, the court will deny the application based on the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a), as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).[4]

## I. STATEMENT OF FACTS

Mosher, Willett, and Mouderres own neighboring properties on Sulphur Mountain Road in Ojai, California.  Mosher owns real property at 8183 Sulphur Mountain Road ("Mosher's Property"), and 7850 Sulphur Mountain Road ("Mosher's Adjacent Property").  Mosher's

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, et seq.  "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[2] Instrument No. 88-102047 recorded in the Official Records of Ventura County, California, on July 20, 1988 ("Water Well Agreement"), attached as Exhibit A to Plaintiff Walter W. Mosher, Jr.'s Application for a Preliminary Injunction for Order: (1) Preventing Defendants Charles Larry Willett and Judith Lee Mouderres from Interfering With the Installation of Water Meters to Monitor and Record Water Use By All Parties for the Water Well at Issue; and (2) Directing All Parties to Pay for Their Equal Share of the Cost of Acquisition, Installation and Monitoring of the Water Meters ("Mosher's Application") [Dkt. # 19] filed on October 13, 2015.

[3] Mosher's Application, at 8:19-9:10.

[4] The evidentiary objections filed by Mosher and Mouderres are overruled.  See Am. Hotel & Lodging Ass'n v. City of Los Angeles, 2015 WL 4576463, at *6 (C.D. Cal. 2015) ("It is well established that trial courts can consider otherwise inadmissible evidence in deciding whether to issue a preliminary injunction.").

residence is located on Mosher's Adjacent Property. Willett owns and resides on real property located at 8228 Sulphur Mountain Road ("Willett's Property). Mouderres owns and resides on real property located at 8600 Sulphur Mountain Road ("Mouderres Property"). Mosher, Willett and Mouderres each receive water from a well located on Mosher's Property (the "Well") pursuant to the Well Agreement executed by Mosher's predecessor in interest, the John Taft Corporation, Willett, and Mouderres' predecessor in interest, Mary Ann Fuller. Water is pumped from the Well to a 21,000 gallon water tank located on Willett's Property (the "Water Tank"). According to the Well Agreement, Mosher, Willett, and Mouderres each own a one-third interest in the Well, the Water Tank and the associated water delivery system. The Well Agreement grants an easement to Willett and Mouderres over Mosher's property for maintenance of the Well.[5] The Well Agreement also provides, in pertinent part:

> The parties agree that regardless of the amount of water used, or if none is used, from "The Well" that all maintenance and repair costs of "The Well" and access easement or easements <u>are to be divided among the three parties on a pro rata basis measured by meter use</u>. Taft, Willett and Fuller agree to share, on an equal basis, the obligation and responsibility for the repair and maintenance of the utility line or lines from the well. The utility costs will be paid by the parties on a pro-rata basis of use, and pump overhauls will be paid on a percentage of use; all other costs to be shared equally by the three parties. The parties agree that all the costs of repair and maintenance of the various items mentioned in this agreement, excluding electricity and pump costs, which are being used on a mutual basis, are to be shared mutually and equally by the PARTIES USING THAT PARTICULAR ITEM, be it utility lines, easements, or other items not herein mentioned, but related to the well, utility lines and easements. Specifically, if any item is ever used by any one of the parties, they are then forever liable for their respective percentage of the cost of all repair and maintenance, unless two of the parties agree IN WRITING to relieve the third party from that said obligation. Failure by any of the parties to pay within thirty (30) days their due share of maintenance costs and operating costs, including monthly electric service costs gives the parties who have paid their share the right to cut off use of the utilities to the party in default. The parties agree to set up a mutually advantageous system for determining the need for repairs and appointing one or more of the parties to be in charge, keep the books, and collect monthly service costs, etc.[6]

---

[5] Mosher's Application, Exh. A at ¶ 2.

[6] <u>Id.</u> at ¶ 5 (emphasis added).

The rights and responsibilities of the parties under the Well Agreement, including the issue of whether water meters can be installed pursuant to the Well Agreement absent consent, has been the subject of prior litigation between Mosher, Willett and Mouderres. Evidently, Willett, who according to Mosher "has been the party in charge of maintaining the Well for decades,"[7] and Jonathan and Beckaa Bradford,[8] who at the time were residing as caretakers on Mosher's property, caused three meters to be installed on property serviced by the Well sometime before January 4, 2010, apparently to assist in recording water usage under the Well Agreement. On January 4, 2010, Mouderres filed a complaint against Willett in Case No. 56-2010-00365001-CU-BC-VTA, <u>Mouderres v. Willett</u>, in the Superior Court of California, County of Ventura, seeking an accounting, damages for alleged breach of contract, nuisance, conversion, intentional and negligent infliction of emotional distress, and declaratory relief. Two related small claims cases followed: (1) Case No. 56-2010-00381361-SC-SC-VTA, <u>Willett v. Mouderres</u>, in the Superior Court of California, County of Ventura; and (2) Case No. 56-2010-00381358-SC-SC-VTA, <u>Bradford v. Mouderres</u>, in the Superior Court of California, County of Ventura. The three cases were consolidated for trial which was commenced on January 19, 2011 and completed on January 21, 2011. On February 11, 2011, a Judgment was entered in the consolidated action which provided, among other things, that "[a] permanent injunction shall issue and is hereby issued:

> (i) that Willett and the Bradfords, and each of them, and their agents, servants, employees, and all those acting by and through them, are enjoined from interfering, by act, threat or intimidation, with Mouderres' exercise of her easement rights as to those easements set forth in the "Agreement Regarding Water Well and Utility Easements" which was recorded in Ventura County on July 20, 1988, as Document Number 88-102047;

---

[7] Mosher's Application, 3:4.

[8] Beckaa Mosher, formerly Beckaa Bradford, is currently Mosher's spouse. They have been married since December 30, 2014. See Answer of Counter-Defendants Walter W. Mosher, Jr., Individually and as Trustee of the Walter W. Mosher, Jr. Living Trust Dated March 25, 2002 [Dkt. # 8], 3:16-18.

4

>   (ii)  that <u>Willett and the Bradfords shall, at their own expense, cause the meters which they installed, or had installed, in the water delivery system to be removed</u> by a licensed plumbing contractor within thirty (30) days from the date of this judgment and that <u>no meter(s) shall be installed except with the written consent of all property owners, including Mouderres;</u>
>
>   (iii)  that Willett shall, at his own expense, cause the water line connecting the water delivery system to the water trough on the Willett Property to be disconnected by a licensed plumbing contractor within thirty (30) days from the date of this judgment, but this shall not preclude Willett from drawing water from plumbing at his house to fill the trough;
>
>   (iv)  that the Bradfords, and their agents, servants, employees, and all those acting by and through them, shall not sever, work on, alter, repair, modify, service or replace any part of the well, the pump, or any part of the water delivery system without the written consent of all property owners, including Mouderres, provided however that the Bradfords may service those portions of the water delivery system which service only the Mosher Property without such consent; and
>
>   (v)  Willett shall not, without the written consent of Mouderres, install any device within or connected to the water line servicing only the Mouderres Property which would reduce the flow or pressure of water to the Mouderres Property or otherwise sever the line to the Mouderres Property.[9]

Inexplicably, Mosher was dismissed as a party to the <u>Mouderres</u> action on May 24, 2010, and was not a party to the Judgment. The Judgment was not appealed and is a final judgment.

   According to Mosher's Application, the issue of water meters has been "[o]ne of the long standing disputes" between the parties.[10] Mosher and Willett want water meters. Mouderres does not. Notwithstanding the fact that Mosher's spouse, Willett and Mouderres were parties to the Judgment entered on February 11, 2011, prohibiting water meters absent consent, there is no evidence that any of the parties ever sought relief from the Judgment in state court, including a modification of the permanent injunction set forth in the Judgment, prior to Willett's bankruptcy.

---

[9] Declaration of Charles L. Willett in Support of Plaintiff Walter W. Mosher, Jr.'s Application for a Preliminary Injunction for Orders: (1) Preventing Defendants Charles Larry Willett and Judith Lee Mouderres from Interfering With the Installation of Water Meters to Monitor and Record Water Use By All Parties for the Water Well at Issue; and (2) Directing All Parties to Pay for Their Equal Share of the Cost of Acquisition, Installation and Monitoring of the Water Meters ("Willett Decl.") [Dkt. # 23] filed October 13, 2015, Exh. B, at 3:21-4:16 (emphasis added).

[10] Mosher's Application, 6:21.

On May 28, 2014, Willett filed a voluntary petition under chapter 13 of the Bankruptcy Code.  On September 15, 2014, an order was entered confirming Willett's Chapter 13 Plan ("Plan").  Willett's confirmed plan contemplates a sale of Willett's Property to pay all allowed claims in full.  Willett has employed a real estate broker to market the property, but a sale motion has not been filed.

On January 8, 2015, Mosher filed a Complaint for: (1) Declaratory Relief; (2) Declaratory Relief; (3) Declaratory Relief to Determine the Validity, Priority and Extent of the Debtor's and Others Interests in Real Property and Easement Rights; (4) Quiet Title; [and] (5) Permanent Injunctive Relief to Prevent Unreasonable Use of Easement ("Complaint").  Mosher seeks injunctive relief only in the Complaint's Fifth Claim for Relief.  There, Mosher seeks a permanent injunction "to prevent Mouderres from interfering with [Mosher's] use and enjoyment of [Mosher's] Property, [Mosher's] Adjacent Property and [Mosher's] Home and using any portion of [Mosher's] Property to access the well with a vehicle and using any portion of [Mosher's] Property at all."[11]  Mosher "also seeks a determination as to whether Mouderres is using the well and water delivery system for purposes other than those stated in the Water Well agreement," and claims that "Mouderres is wrongfully interfering with [Mosher's] use and enjoyment of [Mosher's] Property by among other things, taking photographs of [Mosher], [Mosher's] employees, [Mosher's] Property and [Mosher's] Adjacent Property while she is on [Mosher's] Property."[12]  Mosher claims that Mouderres has refused Mosher's demands to use an alternative route to maintain the Water Tank and water delivery system; that Mouderres' conduct is causing him "grave and irreparable injury;" that he "has no adequate remedy at law for Mouderres' wrongful and unreasonable use of [Mosher's] Property[;] and any failure to permanently enjoin Mouderres from wrongfully and unreasonably using [Mosher's] Property will lead to damage to [Mosher's] Property and unnecessary conflict."[13]  Finally, Mosher asks

---

[11] Complaint, at 20:16-19.

[12] Id. at 21:1-5.

[13] Id. at 21:9-19.

6

that Mouderres be permanently enjoined "from using [Mosher's] Property" and ordered "to use alternate routes to maintain the tank and water delivery system."[14] Mosher's Complaint does not seek any injunctive relief against Willett.

On February 9, 2015, Willett and Mouderres each filed an answer to Mosher's Complaint. Mouderres also filed a counterclaim in which she seeks, among other things, to quiet title to the easement over Mosher's Property and to obtain a judicial determination of the respective rights of the parties under the Water Well Agreement. On April 7, 2015, at the request of the parties, the court assigned the matter to mediation. On July 9, 2015, Henry J. Bongiovi, the assigned mediator, filed a Mediator's Certificate Regarding Conclusion of Mediation stating that mediation was unsuccessful.

Mosher's Application was filed on October 13, 2015. That same day, Willett filed a Notice of Non-Opposition dated October 1, 2015. Mouderres filed written opposition to Mosher's Application on October 22, 2015, to which Mosher replied on October 29, 2015. After a hearing on November 5, 2015, the matter was taken under submission.

## II. DISCUSSION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is appropriate in this court. 28 U.S.C. § 1409(a). This proceeding raises claims that are core under 28 U.S.C. § 157(b)(2)(A) and (O) and claims that are non-core. To the extent that the claims that form the basis of Mosher's Complaint and Mouderres' counterclaim are either non-core or constitute "Stern claims,"[15] Mosher, Willett and Mouderres expressly consent to the entry of a final judgment by the bankruptcy court.[16] Wellness Int'l

---

[14] Id. at 21:20-22.

[15] "These claims are called 'Stern claims,' so named after the Supreme Court's decision in Stern v. Marshall, ___ U.S., ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). Stern claims are claims 'designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter.'" Mastro v. Rigby, 764 F.3d 1090, 1093 (9th Cir. 2014) (citation omitted).

[16] See Joint Status Report [Dkt. # 9] filed March 5, 2015, at 4 ¶ F6.

Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1949 (2015) (holding that "Article III permits bankruptcy courts to decide Stern claims submitted to them by consent").

A. Standard for Issuance of a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, the moving party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. The Ninth Circuit's "sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in Winter." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011). It must, however, be "applied as part of the four-element Winter test. That is, 'serious questions going to the merits' and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135.

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981) (emphasis added). "[C]ourts should be hesitant to grant the extraordinary interim relief of a preliminary injunction in any particular case, but especially so when such an injunction would alter the status quo prior to a trial on the merits." O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 977 (10th Cir. 2004).

"Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendent lite is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1979) (quoting Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976)). "Mandatory injunctions are more burdensome than prohibitory injunctions because they affirmatively require the nonmovant to act in a particular way, and as a result they place the issuing court in a position where it may have to provide ongoing supervision to assure that the nonmovant is abiding by the injunction." SCFC ILC, Inc. v. VISA USA, Inc., 936 F.3d 1096, 1099 (10th Cir. 1991). If "a

party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendent lite, courts should be extremely cautious about issuing a preliminary injunction." Martin v. Int'l Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984). "Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result." Rouser v. White, 707 F. Supp.2d 1055, 1061 (E.D. Cal. 2010).

      1. Likelihood of Success on the Merits

Mosher's Application seeks mandatory injunctive relief. Mosher seeks a preliminary injunction to change the status quo, not to maintain it pending a trial on the merits. Mosher's Application, which is aimed squarely at Mouderres,[17] demands "(1) an order directing that water meters be installed . . . [on] the Willett property, and the Mouderres property, and . . . Mouderres [be enjoined] from interfering with the acquisition, installation, and monitoring of water meters from the Water Tank to the respective parties' property; and (2) . . . that each party [be ordered to] . . . pay their respective equal share of the costs of the total costs of the meters and their installation, by a licensed contractor . . . ."[18]

In the application, Mosher does not examine whether he possesses a likelihood of success on the merits of the claims made the basis of his Complaint. Mosher and Willett may outnumber Mouderres on this issue of water meters two to one, but his application fails to establish a likelihood of success on the merits for two reasons.

First, paragraph 11 of Mosher's Complaint seeks a permanent injunction preventing Mouderres from interfering with the use and enjoyment of his property, and to compel Mouderres to use an alternate route to maintain the Water Tank and water delivery system. Mosher's second claim in the Complaint seeks declaratory relief regarding the installation and

---

[17] Willett does not oppose Mosher's Application. Indeed, Willett filed a Notice of Non-Opposition apparently prepared by Mosher's counsel. The proof of service accompanying the document was signed by David Brotman, who also signed the proofs of service on Mosher's Application supporting papers, including Willett's declaration in support of the application.

[18] Mosher's Application, 14:8-13.

cost of meters,[19] but nowhere in the Complaint does Mosher ask for a permanent mandatory injunction directing the installation of water meters on the respective properties owned by the parties to monitor water usage under the Well Agreement.  See <u>Rivera v. BAC Home Loans Servicing, L.P.</u>, 2010 WL 2757041, at *4 (N.D. Cal. 2010) ("A party may not obtain preliminary injunctive relief where he or she could not obtain permanent injunctive relief.").

Second, the installation of water meters on the properties served by the Well Agreement was prohibited by the state court in the Judgment entered on February 11, 2011.  The water meters that were installed prior to entry of the Judgment were ordered removed, and no water meters have been installed on any of the properties served by the Well Agreement since entry of the Judgment.  Consequently, the status quo upon the filing of Mosher's Complaint in this adversary proceeding was <u>no water meters</u>.  The court disagrees with Mosher's assertion in the reply that status quo is "the shared use of the water system," "not 'no meters'."[20]  Mosher's contention is dead wrong.  "[T]he status quo is not simply any situation before the filing of the lawsuit, but rather the last uncontested status that preceded the parties' controversy." <u>Dep't of Parks & Recreation for State of Ca. v. Bazaar Del Mundo, Inc.</u>, 448 F.3d 1118, 1124 (9th Cir. 2006).  Water meters do not exist on the properties served by the Water Agreement, and have not existed on such properties since they were ordered removed by the state court on February 11, 2011.  This period reflects the "last uncontested status" which determines the status quo for purposes of this adversary proceeding, and a preliminary injunction mandating the installation of water meters to record water use pending a trial on the merits clearly alters the status quo.  Because the preliminary injunction sought in Mosher's Application was not sought as a

---

[19] "A declaratory judgment simply declares the 'rights of the parties or expresses the opinion of the court on a question of law, without ordering anything to be done.'  A declaratory judgment is distinguished from other actions in that it does not seek execution or performance from the opposing parties.  'The declaratory judgment procedure may be resorted to only in the sound discretion of the Court and where the interests of justice will be advanced and an adequate and effective judgment may be rendered." <u>Rendon v. Fresno Police Dept.</u>, 2005 WL 1925859, *7 (E.D. Cal. 2005) (citations omitted).

[20] Plaintiff Walter W. Mosher, Jr.'s Reply Memorandum of Points and Authorities in Support of His Application for a Preliminary Injunction ("Mosher's Reply"), 5:23-24.

permanent injunction in his Complaint and, more importantly, would impermissibly alter the status quo pendent lite pending a trial on the merits, the court finds that Mosher has failed to establish a reasonable likelihood of success on the merits.

### 2. Likelihood of Irreparable Injury

Mosher does not state that he will suffer irreparable injury in the absence of a preliminary injunction nor does Mosher's Application discuss the issue of irreparable injury. Mosher points to "the extreme drought and fire danger posed by the drought,"[21] and claims that the deadlock between the parties over the installation of water meters is a "problem . . . of an urgent nature and needs to be resolved immediately."[22] Randy Whitcomb, a licensed well drilling contractor, testified that, in his opinion, "the water system has been maintained very well" and that "the water delivery system and distribution lines are not leaking other than some minor seepage from the tank."[23] Mosher and Willett each testified that there have been instances of a "sudden and sporatic draining" of the 21,000 gallon Water Tank since the commencement of the adversary proceeding; and based thereon, Mosher and Willett believe that Mouderres is using more than her proportionate share of water from the Well.[24] Mosher and Willett each further testified that "[i]f a fire were to occur, Ventura County Firefighters would have no water to extinguish the fire, leading to potentially deadly consequences."[25]

---

[21] Mosher Decl., 7:24.

[22] Id. at 9:9-10.

[23] Declaration of Randy Whitcomb in Support of Plaintiff Walter W. Mosher, Jr.'s Application for a Preliminary Injunction ("Whitcomb Decl."), 3:13-15.

[24] Declaration of Walter W. Mosher, Jr. in Support of Plaintiff Walter W. Mosher, Jr.'s Application for a Preliminary Injunction for Order: (1) Preventing Defendants Charles Larry Willett and Judith Lee Mouderres from Interfering With the Installation of Water Meters to Monitor and Record Water Use By All Parties for the Water Well at Issue; and (2) Directing All Parties to Pay for Their Equal Share of the Cost of Acquisition, Installation and Monitoring of the Water Meters ("Mosher Decl."), ¶ 20-21;  Willett Decl., ¶ 23-24.

[25] Mosher Decl., 4:19-20; Willett Decl., 5:19-20.

Mouderres, on the other hand, testified that the water lines servicing her property are in excellent condition.[26] She submitted evidence showing leaks in the Water Tank and line from the Well to the Water Tank.[27] Mouderres also submitted copies of electric bills for the pump between the Well and the Water Tank which appear to show that the average daily electric usage to replenish the Water Tank is lower for 2015 than in either 2013 or 2014, contradicting the claims of Mosher and Willett that the pump has had to work extra hard to keep the Water Tank full.[28] She also claims her use of water from the Well is limited to fire protection and the irrigation of drought tolerant landscaping, while "Mosher and Willett have multiple users and multiple water connections" on their properties.[29]

Having examined the conflicting evidence, the court finds that Mosher has failed to establish that extreme or very serious damage is likely to result to him in the absence of the requested mandatory preliminary injunction pending a trial on the merits. "The standard is 'likely irreparable harm,' not possible irreparable harm." In re Rinard, 451 B.R. 12, 23 (Bankr. C.D. Cal. 2011) (citation omitted). Mosher's evidence that Mouderres is periodically draining the Well circumstantial. Furthermore, the possibility that the Well will be empty if and when a fire may occur during a drought is not sufficient, by itself, to satisfy the threshold of "likely irreparable harm."

3. Balance of Hardships & the Public Interest

Mosher's Application does not attempt to balance the hardship faced by him against the hardship the requested mandatory preliminary injunction would cause Mouderres during the pendency of this adversary proceeding. Having failed to establish both a likelihood of success on the merits and the likelihood of irreparable injury, the court finds that the balance of hardship

---

[26] Declaration of Defendant Judith Lee Mouderres in Opposition to Plaintiff Walter W. Mosher, Jr.'s Application for a Preliminary Injunction ("Mouderres Decl."), 9:11-12.

[27] Id. at 13:7-20; 14:17-26.

[28] Id. at 16:9-10.

[29] Defendant Judith Lee Mouderres' Opposition to Plaintiff's Application for Preliminary Injunction ("Opposition"), at 4:28-5:9.

12

tips in favor of Mouderres.  Finally, Mosher has not articulated a cognizable public interest that would be served by the issuance of the requested mandatory preliminary injunction pending a trial on the merits of his claims in this adversary proceeding.

### III. CONCLUSION

For the foregoing reasons, Mosher's Application seeking the issuance of a mandatory preliminary injunction will be denied.

A separate order will be entered consistent with this memorandum.

###

Date: December 14, 2015



Peter H. Carroll
United States Bankruptcy Judge